[Civ. No. 11992. Fourth Dist., Div. Two. June 19, 1972.]

GENERAL INSURANCE COMPANY OF AMERICA et al.,
Petitioners, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
PACIFIC COAST PIPELINE, INC., Real Party in Interest.

**COUNSEL**

Alfred Fadel for Petitioners.

No appearance for Respondent.

Duryea, Carpenter & Barnes, Barnes, Schag, Johnson & Kennedy and William S. Hunter for Real Party in Interest.

**OPINION**

**KAUFMAN, J.**—Plaintiff (real party in interest herein), a California Corporation, filed an action to foreclose a mechanic's lien and to recover on a payment bond based upon its alleged performance of a construction contract. Defendants (petitioners herein) moved for summary judgment and judgment on the pleadings on the ground that plaintiff's verified complaint disclosed on its face that plaintiff was not licensed as a contractor

and that, therefore, it is precluded from maintaining the action. Defendants' motions were denied, and this petition for writ of prohibition/mandate followed.

The essential facts are derived from the allegations of the verified complaint, which, for purpose of this proceeding, are taken as true. Pursuant to a written contract between plaintiff, as subcontractor, and the general contractor, not a party to this proceeding, plaintiff corporation performed construction work on a mobile home park in San Bernardino County. Its performance commenced about October 1970 and was completed approximately June 8, 1971. Under the contract plaintiff was due $179,-120.87 of which $106,871.78 had been paid, leaving an unpaid balance on June 8, 1971 of $72,249.09.

The complaint admits that plaintiff corporation was not licensed as a contractor at the time the written contract was entered into nor at the time the work was performed and that it did not obtain a contractor's license until September 21, 1971, several months after completion of its work on the mobile home park. For the purpose of invoking the doctrine of substantial compliance, however, the complaint sets forth the following facts. Harley N. Weed was at all times pertinent here personally licensed as a contractor. He was carrying on a contracting business known as Pacific Coast Pipeline Contractors Co. In or about September 1969, Mr. Weed caused the formation of plaintiff corporation by the filing of its articles of incorporation, but no further steps were taken at that time to initiate its business. No meetings were held; no bylaws were adopted; no stock was issued; and no business was transacted. On about March 26, 1970, Mr. Weed's sole proprietorship contracting business was transferred to the corporation, and he became the corporation's sole owner, president, chairman of the board and responsible managing officer. Inasmuch as Mr. Weed was already personally licensed, plaintiff could at all times after March 26, 1970, have obtained a contractor's license simply by the appearance of Mr. Weed as plaintiff's responsible managing officer pursuant to section 7068, subdivision (c) of the California Business and Professions Code.[1] No license was obtained for the corporation until September 1971 because of Mr. Weed's mistaken belief that his personal license was sufficient. Mr. Weed directly and personally managed and supervised all of plaintiff's business activities and was on the jobsite and personally supervised the performance of labor and furnishing of materials involved in the case at bench.

---

[1]For purposes of the motions below and this proceeding, this allegation must be interpreted as encompassing plaintiff's ability to comply also with Business and Professions Code, sections 7067, 7067.5, 7069 and 7071.6 to the extent they may be applicable.

■ The question presented is whether plaintiff is precluded from maintaining its lawsuit against the defendants by Business and Professions Code, section 7031 which reads: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, except that such prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029."[2]

Applied literally, the language of section 7031 would preclude plaintiff from maintaining the action. It cannot allege and prove that it "was a duly licensed contractor at all times during" its performance of the work involved in the case at bench. A number of cases, however, have authorized maintenance of an action notwithstanding the failure of the contractor to comply literally with the licensing law. Plaintiff urges that the facts alleged in its complaint bring it within the purview of these cases, or, at least, their rationale. While plaintiff's position is appealing, we have concluded that it is unsound.

It is said that *Citizens State Bank* v. *Gentry,* 20 Cal.App.2d 415 [67 P.2d 364] was the first of the cases applying the doctrine of substantial compliance to the Contractors License Law. (See *Latipac, Inc.* v. *Superior Court,* 64 Cal.2d 278, 283 [49 Cal.Rptr. 676, 411 P.2d 564].) In the *Citizens State Bank* case the contractor had a valid license when the contract was executed and when the job was started. While the work was in progress it became necessary for him to renew his license. In the meantime, he had formed a corporation, which he owned and controlled, and he caused the license to be renewed in the name of the corporation. The work was completed by the corporation. (20 Cal.App.2d at pp. 418-419.) In holding that the contractor was entitled to recover notwithstanding his failure to satisfy the then statutory prerequisite that he be duly licensed " 'at the time the alleged cause of action arose' " (20 Cal.App.2d at p. 419), the court did not speak of substantial compliance. It noted that, since the contractor had a valid license when the contract was executed, the contract was valid when made and distinguished other cases on that basis. It held: "[W]here a manifestly unjust and inequitable result would follow a holding that plaintiff contractor was without capacity to sue on his

---

[2]Business and Professions Code, section 7029 requires a separate license for a partnership or joint venture notwithstanding the individual partners or joint venturers are individually licensed. The word "person" as used in section 7031 includes a corporation. (Bus. & Prof. Code, § 7025.)

contract, the individual plaintiff in whose name the license stood at the time the contract was made and the corporate entity organized by him in whose name the license stood at the time the cause of action accrued, should be considered as one." (20 Cal.App.2d at p. 420.) The authorities cited were cases dealing with the doctrine of piercing the corporate veil.

Some nine years later the California Supreme Court formally adopted the doctrine of substantial compliance in *Gatti* v. *Highland Park Builders, Inc.,* 27 Cal.2d 687, 690 [166 P.2d 265]. There, plaintiff Gatti held a valid contractor's license at the time he entered into a contract with the defendant. Later, the parties agreed that Gatti should complete his performance in partnership with his foreman. Like Gatti, the foreman was validly licensed at the time of the execution of the contract. After full performance by the partnership, a partnership license was applied for and issued to another partnership consisting of Gatti, the foreman and a third party. (27 Cal.2d at p. 688.) The defendant attempted to avoid liability on the theory that the contract was void. (27 Cal.2d at p. 689.) Emphasizing that Gatti was properly licensed when he executed the contract, the court pointed out that the contract was not void, and noted that any matters which might have formed the basis of legitimate inquiry by the licensing board as a condition precedent to the issuance of a license to the partnership of Gatti and his foreman were necessarily considered and favorably acted upon by the subsequent application for and issuance of a partnership license to Gatti, the foreman and a third party. (27 Cal.2d at p. 689.) The court noted that the purpose of the licensing law was to enhance the safety and protection of the public by prohibiting inexperienced persons from engaging in contracting work and indicated that, when the facts disclosed that the statutory purpose was substantially fulfilled, the licensing requirements should not be permitted to "become an unwarranted shield for the avoidance of a just obligation." (27 Cal.2d at p. 690.)

In *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 149 [308 P.2d 713], one partner was individually licensed but the other was not, and no partnership license had been obtained. In an action by the partnership the doctrine of substantial compliance was acknowledged but not applied. Although we shall have occasion hereinafter to refer to the language of this decision, we note at this point that there was no proper license in effect at the time the contract was executed, which fact, wholly aside from the provisions of Business and Professions Code, section 7031, raised the question of the effect of the illegality of the contract. (48 Cal.2d at pp. 150, 155.)

The leading California authority on the doctrine of substantial compli-

ance as applied to the Contractors License Law is *Latipac, Inc. v. Superior Court, supra,* 64 Cal.2d 278, a four to three decision in which the majority held the doctrine applicable to the facts in that case. The corporate plaintiff was duly licensed at the time the contract was executed and thereafter until June 30, 1963, at which time its license expired because of a failure to request renewal and pay the $30 renewal fee, which resulted from a nervous breakdown of plaintiff's office manager. The job was completed on April 28, 1964, and plaintiff renewed its license on June 26, 1964. Throughout the period of performance the qualifications of plaintiff's responsible managing officer were demonstrated by the fact that several related corporations were licensed based upon his qualifications. (64 Cal.2d at pp. 280, 285.) The majority stated, "the test must be whether the contractor's 'substantial compliance with the licensing requirements satisfies the policy of the statute' " (64 Cal.2d at p. 281), enumerated three considerations synthesized from its analysis of the cases as important in determining whether the policy of the statute has been satisfied, and found all three elements present in the case before it. (64 Cal.2d at pp. 281-282.)

The three elements or considerations enumerated were "(1) the fact that plaintiff held a valid license at the time of contracting, (2) that plaintiff readily secured a renewal of that license, and (3) that the responsibility and competence of plaintiff's managing officer were officially confirmed throughout the period of performance of the contract." (64 Cal.2d at pp. 281-282.) The majority opinion states: "Since all these elements here concur, we need not determine whether any of them, singly or in more limited combination, would constitute 'substantial compliance.' " (64 Cal. 2d at p. 281.)

Even on the facts of *Latipac,* where all three elements were satisfied, three justices joined in a vigorous dissent, the substance of which may be extracted as follows. "[T]he majority opinion emphasizes 'considerations of equity' which are said to 'preclude us from requiring the wholly gratuitous enrichment of defendant at the expense of plaintiff and its creditors. . . . But even if such matters were meritorious . . . they may not be considered in an action barred by the express terms of section 7031. [Fn. omitted.] As we explained in *Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 150-151 [308 P.2d 713] . . . . [¶] *'Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties,* and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state [citation].' " (64 Cal.2d at pp. 288-289; original italics.)

There is language in a recent case, *Frank* v. *Kozlovsky,* 13 Cal.App.3d 120, 124-125 [91 Cal.Rptr. 297] which suggests that all three elements or considerations enumerated in *Latipac* must be found present to uphold a finding of substantial compliance, and that appears to be the interpretation placed on *Latipac* by defendants in the case at bench. We do not agree with that interpretation of *Latipac.* As previously noted, the majority in *Latipac* expressly declined to rule on that point. (64 Cal.2d at p. 281.)

It may be, as defendants contend, that the first element enumerated by the majority in *Latipac,* "the fact that plaintiff held a valid license at the time of contracting," is essential. Analyzing and synthesizing numerous cases and noting that the moment of execution of the contract is the "key moment of time when . . . the other party to the agreement must decide whether the contractor possesses the requisite responsibility and competence and whether he should, in the first instance, enter into the relationship," the majority in *Latipac* stated: "In determining whether or not a contractor has 'substantially complied' with the statute and whether such substantial compliance has afforded the other party the effective protection of the statute, the courts have accorded great weight to the significant moment of the entrance of the parties into the relationship. The contractor who holds a valid license at the time of contracting executes a contract valid at its inception both as between the parties and as to third parties who might rely upon it. . . . [¶] As a correlary [*sic*], the *absence* of a license at the time of contracting has figured prominently in decisions in which our courts have denied recovery for want of substantial compliance. [Citing *Steinwinter* v. *Maxwell,* 183 Cal.App.2d 34, 37-38 (6 Cal.Rptr. 496).]" (64 Cal.2d at pp. 282-283; original italics.)

We must confess that in terms of satisfying the ultimate statutory purpose, we fail to perceive the overwhelming significance of the moment of time at which the contract is executed. Section 7031 itself requires the plaintiff to allege and prove "that he was a duly licensed contractor at all times during the *performance* of such act or contract . . . ." (Italics supplied.) From the standpoint of accomplishing the ultimate statutory purpose, we see little difference whether the contractor is technically unlicensed at the moment the contract is executed and thereafter becomes licensed prior to or during performance or whether he is licensed at the moment the contract is executed but becomes technically unlicensed during performance. In legal theory, however, there is a substantial distinction. When the contractor is unlicensed at the time the contract is executed, the problem of illegality of the contract is raised wholly aside from the provisions of Business and Professions Code, section 7031. (See *Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d at pp. 150, 155;

*Gatti* v. *Highland Park Builders, Inc., supra,* 27 Cal.2d at p. 689; *Steinwinter* v. *Maxwell, supra,* 183 Cal.App.2d at pp. 37-38.)³ Whether for this reason or some other reason, it is significantly true, as defendants assert, that there is not a single case holding the doctrine of substantial compliance applicable when the contractor was not duly licensed at the time the contract was executed.

In terms of the majority opinion in *Latipac,* in the case at bench it appears that not only was plaintiff not duly licensed at the time the contract was executed, it was not duly licensed at any time during its performance under the contract. It did apply for and obtain a license a few months after completion of performance, thus, perhaps, satisfying the second element mentioned in *Latipac,* license renewal.⁴ Certainly the third consideration mentioned in *Latipac* is present. The responsibility and competence of plaintiff's managing officer were officially confirmed throughout the period of performance by the fact that he was personally licensed as a contractor during that entire period.

■ The ultimate purpose of the Contractors License Law is the protection of the public against dishonesty and incompetency in the administration of the contracting business as well as in the actual performance of construction work. (*Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d at pp. 149-150; *Bierman* v. *Hagstrom Construction Co.,* 176 Cal.App.2d 771, 775 [1 Cal.Rptr. 826]; see *Jackson* v. *Pancake,* 266 Cal.App.2d 307, 309-310 [72 Cal.Rptr. 111].) Taking as true the allegations of the complaint, liberally interpreted by us in view of the nature of the motions below and the nature of this proceeding (see fn. 1, *ante*), we think it must be admitted that the ultimate statutory purpose is as well satisfied in the case at bench as it was in *Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d 278, *Gatti* v. *Highland Park Builders, Inc., supra,* 27 Cal.2d 687 and *Citizens State Bank* v. *Gentry, supra,* 20 Cal.App.2d 415. Plaintiff's sole owner, president, chairman of the board and responsible managing officer was at all times personally licensed and personally managed and supervised all of plaintiff's business activities including the performance of labor and furnishing of materials on the job here in question. There is, however, a more immediate and specific purpose to Business and Professions Code, section

---

³Business and Professions Code, section 7028 makes it a misdemeanor "for any person to engage in the business or act in the capacity of a contractor within this state without having a license therefor . . . ." The word "person" as used in section 7028 includes a corporation. (Bus. & Prof. Code, § 7025.)

⁴We recognize that, technically, this was not the renewal of a license but the issuance of a new license. (Cf. *Frank* v. *Kozlovsky, supra,* 13 Cal.App.3d at p. 125.) As to this element, however, this was precisely the situation in *Citizens State Bank* v. *Gentry, supra,* 20 Cal.App.2d at page 419.

7031. That purpose is the practical enforcement of the Contractors License Law. (*Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d at p. 151; *Frank* v. *Kozlovsky, supra,* 13 Cal.App.3d at pp. 125-126; see also *Latipac, Inc.* v. *Superior Court, supra* [dissenting opinion], 64 Cal.2d at pp. 289-292.) In our view it is this more immediate and pragmatic statutory purpose that underlies the decisions in *Lewis & Queen* v. *N. M. Ball Sons, supra; Frank* v. *Kozlovsky, supra,* and the dissent in *Latipac, Inc.* v. *Superior Court, supra,* and it is this consideration we deem controlling in the case at bench.

As indicated in *Frank* v. *Kozlovsky, supra,* 13 Cal.App.3d at pages 125-126, the Legislature has by enacting Business and Professions Code, section 7031 manifested its determination that the misdemeanor penalties otherwise provided for contracting without a license constitute insufficient deterrent to prevent the conduct prohibited. To the same effect is *Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d at page 151: "But we are not free to weigh these [equitable] considerations in the present case. Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain any action for compensation in the courts of the state. [Citation omitted.]" Again, "[a]s we have already pointed out, the courts may not resort to equitable considerations in defiance of section 7031." (48 Cal.2d at p. 152.) "The public policy involved here has been determined by the Legislature; it is not a subject of debate in the courts." (*Kirman* v. *Borzage,* 65 Cal.App.2d 156, 158 [150 P.2d 3]; see *Jackson* v. *Pancake, supra,* 266 Cal.App.2d at p. 310.)

In the case at bench plaintiff corporation was not licensed at the time it executed the contract nor at any time during its performance. Under these circumstances, to disregard its corporate existence (cf. *Citizens State Bank* v. *Gentry, supra,* 20 Cal.App.2d at p. 420) would nullify that part of the licensing law requiring a separate license for a corporation (see Bus. & Prof. Code, §§ 7068, subd. (c), 7069), and to hold that plaintiff has nevertheless substantially complied with Business and Professions Code, section 7031, requiring that it be duly licensed at all times during performance, would emasculate the statutory language and nullify the section's purpose of pragmatically enforcing the Contractors License Law. Section 7031 expressly excepts from its prohibition the situation in which a partnership has failed to secure a separate license but each of its partners is personally licensed. (See fn. 2, *ante,* and accompanying text.) It may well be that an exception should likewise be made for the situation involving a corpora-

tion wholly owned, controlled and supervised by one person who is duly licensed. However, the Legislature having expressly provided for the first exception, the creation of another exception is a matter for the Legislature, not the courts. (Cf. *Collins* v. *City & Co. of S.F.,* 112 Cal.App.2d 719, 731 [247 P.2d 362].)

Our decision is not in conflict with *Lewis* v. *Arboles Dev. Co.,* 8 Cal. App.3d 812 [87 Cal.Rptr. 539]. Under the facts indicated in the majority opinion in that case, the contractor was duly licensed at the time the contract was entered into, and, possibly, throughout the entire period of performance. (8 Cal.App.3d at pp. 817-818.)

Let a peremptory writ of mandate issue to the Superior Court of San Bernardino County commanding it to vacate its orders denying defendants' motions for summary judgment and judgment on the pleadings, to make an order or orders granting said motions and to enter judgment for defendants accordingly.

Gabbert, Acting P. J., and Tamura, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied August 16, 1972. Tobriner, J., and Burke, J., were of the opinion that the petition should be granted.