**SUMNER DEVELOPMENT CORPORATION and Alaska Mutual Savings Bank, Petitioners,**

v.

**James SHIVERS, d/b/a S & S Construction Co., Respondent,**

**and**

**Security Title and Trust Company of Alaska et al., Additional Respondents.**

**No. 2036.**

Supreme Court of Alaska.

Jan. 2, 1974.

1. Kriska v. State, 501 P.2d 159 (Alaska 1972).

Jerry E. Melcher, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for petitioner.

James L. Johnston, Anchorage, for respondent Shivers.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

BOOCHEVER, Justice.

We granted this petition for review in order to consider important questions respecting the application of Alaska's contractor's licensing statutes to civil litigation among subcontractors, contractors and owners.[1]

In August of 1972, the respondent Shivers, doing business as S & S Construction, entered into a contract with petitioner Sumner Development Corporation for the performance by S & S of site work on Majestic View Subdivision. The subdivision was partially owned by Sumner which, as general contractor, was developing it. Neither at the time of entering into the contract nor during the performance of it was Shivers licensed by the State of Alaska or bonded according to its statutes. The chief executive of Sumner Development Corporation, Del Sumner, was aware of the lack of bonding of Shivers. Del Sumner, a third person and Shivers had formed the Northwind Corporation to provide a bond and license under which Shivers could work. Shivers was no longer affiliated with Northwind at the time of the transactions relevant to this case. Del Sumner represented to Shivers that the latter could work under the bond and registration of Northwind or Sumner Development Corporation on the site work contract. Shivers commenced work on the site, digging basements, hauling trees, installing sewer lines and septic tanks, and backfilling.

A dispute arose regarding the performance of and payment for the work. On December 7, 1972, Shivers d/b/a S & S filed liens totaling $26,944.50 against various lots in the Majestic View Subdivision. On December 20, 1972, Shivers commenced this action to foreclose those liens. Alaska Mutual Savings Bank now owns the relevant property, having secured it by deed in lieu of foreclosure.

Sumner Development Corporation and Alaska Mutual Savings Bank filed a joint amended answer in which they denied the operative allegations of the complaint. They asserted as affirmative defenses failure to state a claim upon which relief could be granted, accord and satisfaction, estoppel to enforce the lien, failure of consideration, and voidness of the largest of the lien claims; and finally, they counterclaimed against Shivers for breach in failing to do the work in a competent and workmanlike manner and for malicious prosecution/abuse of process.

After engaging in discovery petitioners moved for summary judgment on the lien foreclosure claims against respondent upon several grounds, the only one of which material here is the admission of respondent that he was not a bonded and registered contractor.

The motion for summary judgment was denied by Judge Victor Carlson on July 6, 1973. On July 16, 1973, Justice Fitzgerald ordered a stay of trial to facilitate this petition for review, filed by Sumner Development Corporation and the bank after the denial of the motion.

## RATIONALE FOR EXTRAORDINARY REVIEW

■ We first shall discuss our reasons for our grant of extraordinary review. Under Appellate Rule 23(e)[2] review of an

---

1. AS 08.18.011 et seq. AS 08.18.011 requires registration with the Department of Commerce, AS 08.18.071 requires filing of a bond or cash deposit with the commissioner, AS 08.18.101 requires public liability insurance as a condition of licensing, and AS 08.18.151 bars suits by unlicensed contractors.

2. Appellate Rule 23(e) provides:

An aggrieved party, including the State of Alaska, may petition this court as set forth in Rule 24 to be permitted to review any order or decision of the superior court, not otherwise appealable under Rule 5, in

interlocutory order may be granted where postponement will result in injustice "because of unnecessary delay, expense [and] hardship . . . ." Ordinarily the mere denial of summary judgment will not work an injustice upon a party sufficient to authorize review. Here, however, Shivers sought foreclosure of filed mechanic's liens. If the petitioners were entitled to summary judgment, they also were entitled to have their land freed from the cloud upon title.[3] The interest in releasing a large block of property held and developed solely for the purpose of sale substantially outweighs the ordinary interest in mere avoidance of the expense of an adversary trial. We further note that, regardless of other claims raised by the parties, release of property subject to liens frequently results in material advancement of the whole of the litigation.[4]

Ample ground exists under Appellate Rule 24(a) [5] for grant of review to these petitioners. First, wherever Appellate Rule 23(e) authorizes review, the same factors will ordinarily move our discretion under Appellate Rule 24(a)(2). Further, the petition presents issues "of such substance and importance as to justify deviation from the normal appellate procedure

by way of appeal and to require the immediate attention of this court . . . ." [6]

Shivers has argued that we ought not to grant review because the assertion of his rights as counterclaims (assuming they are barred from affirmative presentation) against Sumner Development Corporation and the bank in their action for breach of contract will result in a trial of the identical issues as if the action proceeded with Shivers' lien claims affirmatively asserted and the petitioners' countering. Thus the course of litigation would not be advanced. We shall discuss the question of presentation of barred claims as setoffs extensively later; here let it suffice that respondent's argument does not rebut the injustice of perpetuating invalid lien claims, nor does it completely respond to the argument that the course of this litigation would be materially advanced by entry of summary judgment. We therefore granted review.

Turning to the merits, we must decide whether AS 08.18.151 bars this action by an unlicensed subcontractor to foreclose a mechanic's lien against a contractor-owner and a subsequent owner, whether the issue was properly raised, and, if so, whether any reason not to apply the statute to these parties exists.

---

any action or proceeding, civil or criminal, as follows:

. . . . . . .

(e) Where postponement of review until normal appeal may be taken from a final judgment or where it will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship or other related factors.

3. *See* AS 34.35.050.

4. Appellate Rule 23(d) provides:

An aggrieved party, including the State of Alaska, may petition this court as set forth in Rule 24 to be permitted to review any order or decision of the superior court, not otherwise appealable under Rule 5, in any action or proceeding, civil or criminal, as follows:

. . . . . . .

(d) Where such an order or decision involves a controlling question of law as to which there is substantial ground for difference of opinion, and where an immediate and present review of such order or decision

may materially advance the ultimate termination of the litigation.

5. Appellate Rule 24(a) provides:

A review is not a matter of right, but will be granted only: (1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court; or (2) where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighted by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision; or (3) where the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative tribunal, as to call for this court's power of supervision and review.

6. Appellate Rule 24(a)(1).

## APPLICATION OF THE STATUTE

AS 08.18.151 bars actions for compensation for work done by unlicensed contractors:

No person acting in the capacity of a contractor may bring an action in a court of this state for the collection of compensation for the performance of work or for breach of a contract for which registration is required under this chapter without alleging and proving that he was a registered contractor at the time he contracted for the performance of the work.

■ That the contract between the parties denominated Shivers a subcontractor is immaterial. The licensing statute defines "contractor" by the nature of the work performed. If the work falls within a single craft classification, done under the supervision of a general contractor, the person doing the work is nevertheless a "contractor" for the, purposes of the statute, although he may be referred to as a "speciality contractor".[7]

■ Shivers' work falls within that specified by the legislature; thus, the licensing act applies to this action. Other jurisdictions hold that similar statutes comprise actions by subcontractors.[8]

Actions to foreclose mechanic's liens are of the genre prohibited. The Arizona Court of Appeals, acting upon a statute indistinguishable in operative language from Alaska's,[9] said: "An action to foreclose a lien is an action seeking 'collection of compensation for the performance' of work for which a license is required." [10] Statutes barring actions by unlicensed, unbonded contractors and judicial constructions thereof disallowing quantum meruit, mechanic's lien and equitable actions protect the public from incompetent and irresponsible contractors.[11] Other jurisdictions rule similarly to Arizona upon the same grounds.[12] No contrary authority has been cited or found.

## PROCEDURAL POSTURE

■ Respondent argued below, although he does not contend here, that a

---

7. AS 08.18.171(2) defines "contractor": "contractor" means a person who, in the pursuit of an independent business, undertakes or offers to perform, or claims to have the capacity to perform, or submits a bid for a project to construct, alter, repair, move or demolish a building, highway, road, railroad, or any type of fixed structure, including excavation and site development and erection of scaffolding; a "general contractor" is a contractor whose business operations require the use of more than two distinct trades whose work the general contractor superintends; the terms "general contractor" and "builder" are synonymous; a "speciality contractor" is a contractor whose operations do not fall within the definition of "general contractor."

8. Lewis & Queen v. N. M. Ball Sons, 48 Cal.2d 141, 308 P.2d 713, 721 (1957). *See* Annot., Failure of Artisan or Construction Contractor to Procure Occupational License or Permit as Affecting Validity or Enforceability of Contract, 82 A.L.R.2d 1429. *But cf.* Dow v. United States, 154 F.2d 707 (10th Cir. 1946).

9. Chickering v. George R. Ogonowski Construction Co., 18 Ariz.App. 324, 501 P.2d 952 (1972), A.R.S. § 32–1153.

10. Chickering v. George R. Ogonowski Construction Co., 18 Ariz.App. 324, 501 P.2d at 955. This argument is particularly strong in Alaska since the legislature repealed former AS 08.18.290 (§ 1 ch. 164 SLA 1966) which provided: "Nothing in this chapter (construction contractors) shall be construed to affect an applicable lien law . . . ."

11. Chickering v. George R. Ogonowski Construction Co., 18 Ariz.App. 324, 501 P.2d at 954. *See* Gates v. Rivers Construction Co., 515 P.2d 1020, 1022 (Alaska 1973). The absolute statutory language leaves no option for us to consider the equitable principles discussed in *Gates*.

12. Lewis & Queen v. N. M. Ball Sons, 48 Cal.2d 141, 308 P.2d 713, 721 (1957); General Insurance Co. of America v. Superior Court of San Bernardino County, 26 Cal.App. 3d 176, 102 Cal.Rptr. 541 (1972); Albaugh v. Moss Construction Co., 125 Cal.App.2d 126, 269 P.2d 936, 940 (1954); Stewart v. Hammond, 471 P.2d 90, 92 (Wash.1970); Harry Berenter, Inc. v. Berman, 258 Md. 290, 265 A.2d 759 (1970); Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965) (statutorily compelled).

motion for summary judgment is not a proper time to raise the defense of the statute and that the statute was waived by failure specifically to plead it in the answer. Assuming the arguments are before us, we reject them.[13]

## ESTOPPEL TO ASSERT
## THE STATUTE

█ The trial court denied the motion for summary judgment upon the theory that the conduct of Sumner Development Corporation (which respondent argued should be imputed to the bank also) estopped the petitioners from raising the bar of AS 08.18.151. As a general rule, a party is not estopped from asserting the illegality of a contract because of his participation in or encouragement of the illegality.[14] The general rule applies where the fault is the failure of a party to have a required contractor's license.[15] An assertion by one party that a contract may be legalized through some questionable tactic, like Sumner's promise that Shivers could shelter under Northwind's bond, has raised little sympathy in reported decisions.[16] Even where the owner's foreknowledge of the contractor's lack of license was combined with a specific promise not to rely on the statute and a representation that the owner had a license

13. Statutes which require a party to plead and prove the existence of an occupational license make the existence of the license a necessary element of a cause of action. Chickering v. George R. Ogonowski Construction Co., 18 Ariz.App. 324, 501 P.2d 952, 954 (1972); General Insurance Co. of America v. Superior Court of San Bernardino County, 26 Cal.App.3d 176, 102 Cal.Rptr. 541, 542–547 (1972); Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200, 205 (1965). Thus the general defense of failure to state a claim upon which relief could be granted sufficiently raised the issue. Failure to state a claim may be raised on motion for summary judgment at any rate. Civ.R. 12(h); Horwitz v. Food Town, Inc., 241 F.Supp. 1 (E.D. La.1965), aff'd 367 F.2d 584 (5th Cir. 1966); 5 Wright and Miller, Federal Practice and Procedure [§ 1392] 861, 862.

14. Inter-Continental Promotions, Inc. v. Miami Beach First National Bank, 441 F.2d 1356, 1360–1361 (5th Cir. 1971) (defendant not barred from asserting illegality of boxing promotion contract despite defendant's ability to perform in a legal manner and obligation on face of contract to do so where parties contemplated illegal transaction ab initio); Le John Mfg. Co. v. Webb, 95 U.S.App.D.C. 358, 222 F.2d 48, 52 (1955) (accepting and performing at profit contracts obtained by agent acting on contingent fee basis does not estop contractor from asserting illegality of contingent fee against agent's suit to collect); Moving Picture Machine Operators Local 236 v. Cayson, 281 Ala. 468, 205 So.2d 222, 232 (1967) (party who acquiesced in and took advantage of seniority provision in collective bargaining agreement not estopped to assert illegality thereof under right-to-work law); Clark v. Tinnin, 81 Ariz. 259, 304 P.2d 947, 950 (1956) (undisclosed principal secured on illegal liquor license); City Lincoln-Mercury

Co. v. Lindsey, 52 Cal.2d 267, 339 P.2d 851, 856 (1959) (abuse of car does not estop buyer from asserting illegality of sale contract); Prime v. Hyne, 260 Cal.App.2d 397, 67 Cal. Rptr. 170, 174 (1968) (heirs to estate not estopped to assert illegality under rule against perpetuities of contract for sale of expectancy from estate made before death of testatrix where purchaser had gone into possession under lease and incurred great expense improving property); Milton Frank Allen Publications, Inc. v. Georgia Ass'n of Petroleum Retailers, 224 Ga. 518, 162 S.E.2d 724, 730 (1968) (advertising, publications and membership contract of over 20 years does not create estoppel); Whitney v. Continental Life and Accident Co., 89 Idaho 96, 403 P.2d 573, 579 (1965) (illegal insurance contract asserted by carrier); Kaiser v. Thomson, 55 N.M. 270, 232 P.2d 142, 144 (1951) (see infra n. 15); P. I. P. Agency, Inc. v. I. T. T. Life Insurance Co. of New York, 70 Misc.2d 740, 334 N.Y.S.2d 758, 760 (Spec. Term 1972) (promise to pay illegal bonus to agents for generating new business); Somerset v. Reyner, 233 S.C. 324, 104 S.E.2d 344, 347 (1958) (excessive covenant not to compete not supported by estoppel); Farha v. Elam, 385 S.W.2d 692, 695 (Ct.Civ.App.Tex.1964) (no accounting for profits of unlicensed architectural partnership); Cooper v. Baer, 59 Wash.2d 763, 370 P.2d 871, 872 (1962) (one who procured another to arrange illegal poker game not estopped to assert illegality despite knowing misrepresentation that game was licensed by local government).

15. Kaiser v. Thomson, 55 N.M. 270, 232 P.2d 142, 143–144 (1951); Murphy v. Campbell Investment Co., 79 Wash.2d 417, 486 P.2d 1080, 1088 (1971).

16. Cooper v. Baer, 59 Wash.2d 763, 370 P.2d 871, 872 (1962).

which he would consider to inure to the benefit of the contractor under joint venture or partnership theory, the Supreme Court of Nevada held a cause of action on the contract to be barred by the assertion of the licensing statute.[17]

■ Statutes which cause forfeitures are not favored. Where a bar to legal action is not mandated we approach the case from our own view of intelligent policy and with the thought of doing justice between the parties.[18] Here, however, the legislature chose the closing of the doors of the courts as a fundamental tool to enforce its policy of ensuring competence and financial responsibility in those who undertake work as contractors. We are bound to enforce the legislative policies as we find them expressed in AS 08.18.011 et seq. Anyone engaged in building trades must be charged with awareness of the pervasive system of licenses and permits designed to enhance the public safety and confidence in the industry. Engrafting equitable exceptions onto the enforcement policy at best aids the ignorant and gullible, whom the legislature sought to regulate, and at worst creates fertile fields for the growth of sharp practice. We believe that the legislature favored the view of the California Supreme Court that:

> Knowing that they will receive no help from the courts and must trust completely to each other's good faith, the parties

are less likely to enter an illegal arrangement in the first place.[19]

Taking the facts, as we must, in the light most favorable to the plaintiff, we find that Sumner Development Corporation's knowledge of Shivers' lack of bond and registration, its suggestion that Shivers could shelter under the bond and registration of Northwind, and the participation of its principle officer in a company previously designed for the purpose of providing a bond and registration for Shivers do not create an estoppel against Sumner to assert the defense of AS 08.18.151.

■ We further reject the notion that Shivers can claim compliance with the licensing statutes by "sheltering" under the license and bond of another company. Such a theory disregards basic principles of suretyship[20] and undermines the licensing statutes.[21] Especially where the formation of a legitimate joint venture, one member of which is licensed, satisfies the statute, "sheltering" is unreasonable. Shivers has not argued that a joint venture or partnership of a nature that satisfies the statute existed.

■ We decline to consider the issue of whether respondent complied substantially with the licensing statutes. Respondent failed to argue the point below and raised it here based upon unverifiable assertions in his brief. Even if those assertions were considered to be true, they do

---

17. Magill v. Lewis, 74 Nev. 381, 333 P.2d 717, 718–719 (1958). The court in *Magill* did uphold an action based upon the same facts under a theory that the owner's inducement of the contractor to enter the illegal contract while planning to assert the statute to avoid payment constituted the tort of deceit. Deceit actions are beyond the purview of licensing statutes. We approve of the holding in *Magill*, but in the instant case neither the complaint nor the materials before the court upon motion for summary judgment discloses facts sufficient to constitute an action for deceit. Summary judgment entered in this case should not bar an action by Shivers if he can plead and prove deceit. *See also* Pickens v. American Mortgage Exchange, 269 Cal.App.2d 299, 74 Cal.Rptr.

788 (1969); Grant v. Weatherholt, 123 Cal. App.2d 34, 266 P.2d 185, 191 (1954).

18. Gates v. Rivers Construction Co., 515 P.2d 1020, 1022 (Alaska 1973).

19. Lewis & Queen v. N. M. Ball Sons, 48 Cal.2d 141, 308 P.2d 713, 719 (1957).

20. 17 Am.Jur.2d [Contractor's Bonds § 6] 195; 50 Am.Jur. [Suretyship § 29] 921. *Cf.* 17 Am.Jur.2d [Contractor's Bonds § 8] 196, 197; AS 08.18.071(a).

21. Cooper v. Johnston, 283 Ala. 565, 219 So. 2d 392, 395–396 (1969). *See* Power City Communications, Inc. v. Calaveras Tel. Co., 280 F.Supp. 808, 814 (E.D.Cal.1968).

not measure up to the most liberal of substantial compliance holdings.[22]

Since AS 08.18.151 applies to the instant action, and no reason to ameliorate its impact appears, it follows that the court below should have entered summary judgment in favor of petitioners Sumner Development Corporation and the bank. Before concluding however, we dispose of one issue raised by the parties which will undoubtedly arise upon remand.

## BARRED CLAIM AS A SETOFF

Shivers argued that we ought not to grant review because the assertion of his claims as a setoff against petitioners would result in trial of issues identical to those raised by the lien claims. Although we did not find this argument dispositive of the propriety of granting review, its being raised resulted in the briefing of an issue of vital importance and substantial controversy: whether a claim barred by the licensing statute may be raised as a setoff against the owner's action for breach of contract.

Petitioners relied upon Hedla v. McCool,[23] a recent decision of the United States Court of Appeals for the Ninth Circuit based upon Alaska law, for the proposition that setoff is interdicted. *Hedla*, if

correct, is dispositive. In *Hedla* a firm of architects prepared defective plans for a commercial building. The owners sued for breach of contract, and the architects attempted to set off the value of their services rendered, despite the fact that the claim was barred from affirmative presentation because of the failure to comply with the applicable Alaska licensing statute.[24] The Court held that no facts were adduced at trial to quantify an amount of setoff and then added the alternative holding that setoff was impermissible.[25] After reviewing California authorities supporting counterclaim, the court concluded that Alaska would find that its licensing statute prohibits setoff because violation here is punishable as a crime and therefore is *malum in se* compared to *malum prohibitum* under California's statute. We respectfully disagree with the conclusion drawn from the authority cited.

The California rule is summarized in a 1960 case:

It is well settled that the failure to obtain a required contractor's license will bar the contractor from recovery for his work in an action brought by him, but will not bar him from offsetting as a defense sums which would otherwise be

22. Murphy v. Campbell Investment Co., 79 Wash.2d 417, 486 P.2d 1080 (1971). *See* Desert Springs Mobile Home Ranches Inc. v. John H. Wood Construction Co., 15 Ariz. App. 193, 487 P.2d 414 (1971); Latipac, Inc. v. Superior Court of Marin County, 64 Cal.2d 278, 49 Cal.Rptr. 676, 411 P.2d 564 (1966); Famous Builders, Inc. v. Bolin, 264 Cal.App.2d 37, 70 Cal.Rptr. 17 (1968). The most recent of the California cases, General Insurance Co. of America v. Superior Court of San Bernardino County, 26 Cal.App.3d 176, 102 Cal.Rptr. 541, 544–546 (1972) contains an excellent summary of substantial compliance doctrine and the underlying rationale.

23. 476 F.2d 1223 (9th Cir. 1973).

24. Former AS 08.48.150 (enacted § 2, ch. 111 SLA 1949, repealed § 1 ch. 179 SLA 1972). Hedla v. McCool, 476 F.2d at 1227.

25. *Id.* at 1228. The trial judge in *Hedla* found that the accountants had paid the archi-

tects approximately $2,000; taking this and other factors into account he found that the equities between the parties were sufficiently balanced that, on the facts, no setoff was justified. The criteria applied were "'the degree of criminality or evil, the comparative innocence or guilt of the parties, the extent of public harm involved, the moral quality of the conduct of the parties, and the severity of the penalty or forfeiture that will result from refusal of relief.' 6A CORBIN ON CONTRACTS § 1534 at 818 . . . ." Hedla v. McCool, 476 F.2d at 1228 n. 2. The embracing of a balancing of the equities as a third alternative holding further weakens the conclusion that Alaska policy interdicts setoff. The knowledge of and active participation in the illegality by Sumner Development Corporation distinguish the instant case from *Hedla* regarding the justification for setoff between the relevant parties.

due him under the illegal contract. "It is to be noted that the statute merely prohibits a contractor from maintaining or bringing an action upon a contract. . . . It does not prohibit him when sued from setting up as a defense any sums which may be equitably due him from the plaintiff upon such illegal contract. Such a contract is not *malum in se* but merely *malum prohibitum*." Marshall v. Von Zumwalt, 1953, 120 Cal. App.2d 807, 262 P.2d 363, 364. The contractor's license statute cannot be used as a shield to avoid a just obligation.[26] Later California cases confirm the above rule.[27] These later cases the Court contrasted with Alaska law upon the basis that the Alaska statutes provided a criminal penalty.[28] However, Cal.Bus. and Prof. Code § 7028 provides: "It is a misdemeanor for any person to engage in the business or act in the capacity of a contractor within this state without having a license therefor. . . ." That statute has been in effect without substantial change since 1929[29] Since 1850, a California misdemeanor has been punishable by a fine of up to $500 and a jail term up to six months.[30] The contrasting Alaska statute under which *Hedla* was decided, former AS 08.48.400(b), provided:

Any person who violates any provision of this section is guilty of a misdemeanor and upon conviction is punishable by a fine of not less than $25 nor more than $500, or by imprisonment not to exceed six months.

The statute applicable to contractors in the instant case, AS 08.18.141, simply denominates violation a misdemeanor. Further, the California setoff cases were decided in the face of a statute prohibiting suit without pleading and proof of licensing[31] which is almost identical to AS 08.18.151. But in *Hedla*, the court was required to infer the result of illegality of contract since no similar pleading and proof requirement existed under the former Alaskan licensing statute there being construed. Finally, Corbin on Contracts, the authority cited in footnote 2 of *Hedla*, states in the cited section that the distinctions of *malum in se* and *malum prohibitum* are no longer good law. In determining whether restitution or some other judicial remedy will be granted despite the illegality, one must balance:

the degree of criminality or evil, the comparative innocence or guilt of the parties, the extent of public harm involved, the moral quality of the conduct of the parties, and the severity of the penalty of forfeiture that will result from a refusal of relief.[32]

 We find the California cases permitting setoff more persuasive than *Hedla*. Statutes requiring pleading and proof of a license give the owner a windfall when the contract has been fully or partially executed. It would be unseemly for the courts

---

26. S & Q Construction Co. v. Palma Ceia Development Organization, 179 Cal.App.2d 364, 3 Cal.Rptr. 690, 692 (1960) [citation omitted].

27. Dahl-Beck Electrical Co. v. Rogge, 275 Cal.App.2d 893, 80 Cal.Rptr. 440, 445 (1969); Culbertson v. Cizek, 225 Cal.App.2d 451, 37 Cal.Rptr. 548, 560 (1964); Steinwinter v. Maxwell, 183 Cal.App.2d 34, 6 Cal.Rptr. 496, 499 (1960).

28. Hedla v. McCool, 476 F.2d at 1228.

29. [1929] Cal.Stat. ch. 791 § 1 1st sent. p. 1595; [1931] Cal.Stat. ch. 578 § 1261; [1933] Cal.Stat., ch. 573 § 1 p. 1483; [1937] Cal.Stat. ch. 499 § 11 p. 1488; [1939] Cal. Stat. ch. 37 § 1 p. 384; [1955] Cal.Stat. ch. 1062 § 1 p. 2030; [1963] Cal.Stat. ch. 1883 § 2; [1969] Cal.Stat. ch. 1583 § 4.

30. Cal.Pen.Code § 19, [1850] Cal.Stat. ch. 99 § 143 p. 247.

31. Cal.Bus. & Prof.Code § 7031 provides:
No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract. . . .

32. 6A Corbin on Contracts [§ 1534] 818; *accord* 15 Williston on Contracts [§ 1764] 236 (3rd ed. Jaeger).

not only to countenance this windfall, but also to allow the owner to increase his bounty at the expense of the helpless contractor in a suit for breach of a construction contract. Allowing setoff achieves an equitable result of compensating the owner only if the damages caused are greater than the benefit received.

■ There may, however, be cases where the contractor acted in a knowing and willful pattern to evade the licensing statute or to defraud the owner. We modify the California rule so as to disallow setoff where: "the degree of criminality or evil, the comparative innocence or guilt of the parties, the extent of public harm involved, the moral quality of the conduct of the parties, and the severity of the penalty of forfeiture that will result from refusal"[33] of setoff *clearly call for a disallowance*.[34] Since Sumner Development Corporation admitted that it knew of Shivers' lack of license and, in fact, encouraged Shivers to work under its bond or the bond of a company affiliated with Sumner Development Corporation we cannot say that the comparative conduct of the parties clearly calls for a disallowance of setoff. We conclude that Shivers correctly argued that an order by this court directing the trial court to enter summary judgment dismissing his lien foreclosure action will not prohibit the assertion of his claim against Sumner Development Corporation as a setoff against Sumner Development Corporation's claim respecting the Majestic View contract.

Finding, as we have, that AS 08.18.151 bars Shivers' lien claims, we remand this case for proceedings consistent with this opinion. Specifically, we direct the superior court to enter summary judgment in favor of Sumner Development Corporation and the bank against Shivers; such judgment shall be in a form that does not prejudice the assertion by Shivers of the claims as a setoff against the petitioners in this action or the assertion by Shivers of a possible claim in deceit.

Petition for review granted. Order reversed and case remanded with instructions.

33. *Id.*

34. Thus, based upon the relative conduct and positions of the parties, we might well have reached a result identical to the Ninth Circuit's in *Hedla*, although the rationale would be different. *See supra*, note 25.