BALBOA INSURANCE COMPANY,
Appellant,

v.

SENCO ALASKA INC., an Alaskan
Corporation, Appellee.

No. 3076.

Supreme Court of Alaska.

July 29, 1977.

Max F. Gruenberg, Jr., Anchorage, for appellant.

William M. Erwin, Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

RABINOWITZ, Justice.

This appeal presents a narrow question of statutory construction, specifically, whether AS 08.18.161(5)[1] bars the claim of an equipment supplier against a construction contractor's registration bond,[2] when the equipment has not been fabricated into a structure, but rather has become part of the contractor's capital equipment. Balboa Insurance Company has appealed from the superior court's decision in favor of Senco Alaska Inc. on the parties' cross-motions for summary judgment. The parties agreed to stipulated facts; thus entitlement to judgment as a matter of law is the sole question before us.

1.  AS 08.18.161(5) provides:
    This chapter does not apply to:

    .    .    .    .    .

    (5) the sale or installation of finished products, materials or articles of merchandise which are not actually fabricated into and do not become a permanent, fixed part of a structure.

2.  AS 08.18.071 provides:
    Bond required. (a) Each applicant shall, at the time of applying for a certificate of registration, file with the commissioner a surety bond running to the State of Alaska conditioned upon the applicant's promise to pay
    (1) all taxes and contributions due the state and political subdivisions,

    (2) all persons furnishing labor or material or renting or supplying equipment to the applicant, and
    (3) all amounts that may be adjudged against him by reason of negligent or improper work or breach of contract in the conduct of the contracting business or by reason of damage to public facilities occurring in the course of a construction project.
    (b) If the applicant is a general contractor the amount of the bond shall be $5,000; if he is a specialty contractor the amount of the bond shall be $2,000. In lieu of the surety bond the applicant may file with the commissioner a cash deposit or other negotiable security acceptable to the commissioner of commerce, in the amount specified for bonds.

Balboa wrote a $2,000 specialty contractor's registration bond for Billy Dean, d/b/a Dean Construction Company. Later, Dean purchased an air compressor from Senco. When Dean went bankrupt while owing $791.95 to Senco on the purchase of the compressor, Senco sought recovery of that amount from Balboa on Dean's contractor's registration bond. The air compressor was not actually fabricated into and did not become a permanent fixed part of a structure. Rather than being built into or consumed in a building project, the compressor became part of the equipment used by Dean in his construction business. The parties' stipulated facts placed the sale of the compressor within the provisions of AS 08.18.161(5).

Balboa argues that the exemption in AS 08.18.161(5) takes the transaction out of the provisions of the chapter, conceding that the claim would otherwise be covered under AS 08.18.071(a)(2).[3] Balboa would have us look to the statutory framework in interpreting AS 08.18.161(5) as an exemption from claims against the construction contractor's registration bond. Balboa further argues that the statutory policy underlying the exemption in AS 08.18.161(5) is the same as that underlying construction job performance bonds, and thus, urges that we be guided by the authority on such performance bonds.

Senco, on the other hand, calls our attention to the fact that chapter 18 of title 8, is a licensing statute for construction contractors. Senco alleges that "[t]he chapter does not deal with the kind of claims which may be brought against the bond." Thus, Senco argues, inasmuch as AS 08.18.161(5) is an exemption from the application of the chapter, it must be interpreted as an exemption from the licensing requirements of the chapter.

With the parties' respective arguments in mind, we turn to the legislative history, purposes and provisions of AS 08.18. Chapter 18 was enacted by the legislature in 1968; a portion of a committee report on the bill states:

This bill repeals the present contractors licensing law and replaces it with a new law . . . . The essential feature of the proposed law is that the contractor must have a bond in the amount of $5,000 if a general contractor, and $2,000 if a specialty contractor, guaranteeing the payment of his employee's wages, taxes, suppliers, for any breach of contract and any damage done to public facilities.[4]

Thus, it appears that the bonding provision is an essential aspect of AS 08.18, and it can be assumed that the bond was a primary reason for the legislature's decision to require registration of construction contractors. The statutory framework also generates fees for the state [5] and requires public liability and property damage insurance.[6] Article 3 of chapter 18 provides for enforcement mechanisms, among which is a provision barring access to Alaska's courts in contract actions brought by any unregistered contractor.[7]

While our review of AS 08.18 has led us to conclude that the statute is essentially a licensing statute, we have further determined that Senco's interpretation of AS 08.18.161(5) is incorrect. The interpretation urged by Senco would require us to disregard two important provisions of AS 08.18. Contrary to Senco's argument, the statute does address what types of transactions are covered by the contractor's regis-

---

3. See note 2, supra, for the text of AS 08.18.-071.

4. Report of the Judiciary Committee on HCS for Senate Bill No. 161, 1968 House Journal at 545.

5. AS 08.18.041 provides:
   The applicant shall pay to the commissioner a registration or renewal fee as follows:

(1) general contractor ................ $100
(2) specialty contractor .............. $ 50

6. AS 08.18.101 mandates procurement of business insurance of at least $20,000 for property damage, $50,000 for injury to one person and $100,000 for injury to more than one person.

7. AS 08.18.151. See Sumner Dev. Co. v. Shivers, 517 P.2d 757 (Alaska 1974).

tration bond. AS 08.18.071[8] defines the areas to be covered by the bond; subsection (a)(2) deals with the registration applicant's promise to pay "all persons furnishing labor or material or renting or supplying equipment to the applicant." In AS 08.18.081 it is provided that "[a] person having a claim against a contractor for any of the items referred to in [AS 08.18.071] may bring suit upon the bond in the superior court . . . ." Sections 71 and 81, without more, would allow the supplier of any materials or equipment, whether or not incorporated into the structure or consumed in construction, to sue on the registration bond. However, we have concluded that AS 08.18.161(5), which makes the chapter inapplicable to materials and equipment not incorporated or consumed in the construction of a structure, operates to exclude such material and equipment from the operation of sections 71 and 81. That is, we have determined that AS 08.18.161(5) functions to exclude materials and equipment not consumed in construction or incorporated into the structure from the coverage of the registration bond.

Our interpretation is supported by another provision of AS 08.18.161. Clause 8 of section 161 exempts from application of the chapter, "a person who only furnished materials, supplies or equipment without fabricating them into, or consuming them in the performance of the work of the contractor." Were we to have adopted Senco's interpretation of AS 08.18.161(5), i. e., had we held that the exemption relates to who must obtain a license, AS 08.18.161(8) would have been rendered a superfluity. As noted by Sutherland:

'It is an elementary rule of construction that effect must be given, if possible, to every word, clause and sentence of a statute.' A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that

one section will not destroy another unless the provision is the result of obvious mistake or error.[9] (footnotes omitted)

We note further that the meaning of AS 08.18.161(5), as we interpret it today, would have been much clearer had the legislature placed the exception to bond coverage in AS 08.18.071, rather than including it in the "General Provisions."

Our decision today is further supported by the policy underlying the bonding provisions of AS 08.18. As indicated in the portion of the legislative history of AS 08.18 quoted previously, the legislature was seeking to guarantee payment of the contractor's employees' wages, taxes and suppliers. A claim by the supplier of a contractor's capital equipment could easily exhaust the coverage limits of the bond, since such equipment is often very expensive. Once the bond coverage was exhausted, the others, less able to protect themselves, would be unprotected. Furthermore, the supplier of material or equipment which is not consumed in the construction of a structure or does not become a fixture has a course which is not open to the supplier of fixtures or consumed products. Specifically, if the transaction was covered by a security agreement and financing statement in accordance with Article 9 of the Uniform Commercial Code, AS 45.05.690–.794, the supplier has a protected security interest in the material or equipment.[10] It is our opinion that the legislature intended the utilization of the procedures in Article 9 to protect the interests of parties such as Senco, rather than resort to a contractor's registration bond.

In light of the foregoing, this case is reversed and remanded to the superior court for an entry of summary judgment in favor of Balboa.

**8.** Note 2, *supra*.

**9.** 2A C. Sands, Sutherland Statutory Construction § 46.06, at 63 (4th ed. 1973).

**10.** We note that according to the stipulated facts the charges involved in this case were covered by such a security agreement and financing statement.