[No. B006249. Second Dist., Div. One. Oct. 18, 1985.]

KNAPP DEVELOPMENT & DESIGN, Plaintiff and Appellant, v.
PAL-MAL PROPERTIES, LTD., Defendant and Respondent;
GARY MARLIN, as Cotrustee, etc., et al., Interveners and Respondents.

**[Opinion certified for partial publication.*]**

*See footnote, *post,* page 431.

424

COUNSEL

Laurence E. Clark and Wanda Grasse for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Ball, Hunt, Hart, Brown & Baerwitz, Paul R. Pearlson, Anthony Murray and James Robert Noblin for Interveners and Respondents.

OPINION

SPENCER, P. J.—

### INTRODUCTION

Plaintiff Knapp Development & Design appeals from a summary judgment in favor of defendant Pal-Mal Properties, Ltd., and interveners Gary Marlin

and Jack Burstein as trustees for Independent Investors Trust. Judgment was entered for defendant and interveners on the ground plaintiff's suit was barred by Business and Professions Code section 7031, which prohibits an unlicensed contractor from bringing an action for collection of compensation for work performed.

## STATEMENT OF FACTS

Joan Knapp is president and principal shareholder of plaintiff Knapp Development & Design (KDD). KDD was incorporated on October 25, 1978, and shares in the corporation were issued in December 1980. Joan Knapp is also the general partner and principal owner of the Real Holding Company (RHC), a limited partnership. Ms. Knapp has been licensed as a general contractor for over 17 years. KDD applied for a contractor's license in March of 1984, after this action was instituted.

In 1977, Joan Knapp purchased two parcels of real property; she subsequently transferred title to RHC. One of the properties, located at 881 Alma Real Drive in Pacific Palisades, is the site of the Palisades Village Center (PVC). Ms. Knapp began development of PVC in 1977 for RHC; the general contractor on the project was the Ray Wilson Company. In July 1980, KDD took over as general contractor on the project and continued in that capacity until June 1982. This change was effected by a construction agreement between RHC and KDD.

A limited partnership was formed in May 1982 to obtain additional funding for the project—defendant Pal-Mal Properties, Ltd. (Pal-Mal). The general partner was Robert Mahoney; the limited partners were RHC, Robert Marlin, Jack Burstein and Frank Tolin. RHC transferred title to the PVC property and a Malibu property to Pal-Mal. As part of the partnership agreement, RHC agreed to loan money to Pal-Mal if Pal-Mal did not have sufficient funds to carry out partnership business; failure to make such loans constituted a default on the agreement.

Pal-Mal obtained a loan from Independent Investors Trust (Independent). Robert Marlin, one of Pal-Mal's limited partners, is the settlor of Independent, the beneficiaries of which are his children, Deborah and Gary Marlin. Gary Marlin and Jack Burstein, another limited partner, are Independent's co-trustees and interveners in the present action.

For some reason, Pal-Mal was unable to make payment on the note to Independent. Pal-Mal demanded an advance of funds from RHC pursuant to the limited partnership agreement; neither RHC nor Joan Knapp had

sufficient funds to make the payment. Pal-Mal did not make the payment, and in July 1982, Independent sent Pal-Mal a notice of default and election to sell.

Joan Knapp, RHC and KDD were evicted from the PVC property in July 1982. KDD demanded payment for the work it had performed on the property, but no payment was made. KDD filed a mechanic's lien on the property, then brought the instant action to foreclose on the mechanic's lien, also in July 1982.

Independent intervened in the action in September 1982. At a foreclosure sale held on November 11, 1983, Independent bought the PVC property.

CONTENTIONS

I

Plaintiff contends section 7031 of the Business and Professions Code, which exempts from its application licensed contractors forming a joint venture but does not exempt corporations, denies the latter equal protection of the law.

II

Plaintiff also contends the trial court erroneously barred this action under section 7031[1] in that: (1) the contract under which the action was brought was signed by Joan Knapp in her individual capacity, and she personally was a licensed contractor; and (2) plaintiff substantially complied with the provisions of section 7031.

III

Plaintiff avers Joan Knapp should be allowed to disregard her corporate status.

IV

Plaintiff further avers respondents should be estopped from asserting section 7031 as a bar to plaintiff's action.

---

[1] All code sections refer to the Business and Professions Code unless otherwise stated.

V

Plaintiff finally contends, in any event it should be allowed to recover the cost of janitorial and maintenance services provided.

DISCUSSION

I

Plaintiff contends section 7031, which exempts from its application licensed contractors forming a joint venture but does not exempt corporations, denies the latter equal protection of the laws. We disagree.[2]

The equal protection guarantee of the Fourteenth Amendment to the United States Constitution and article I, section 7, and article IV, section 16, of the California Constitution prohibit the state from arbitrarily discriminating among persons subject to its jurisdiction. (*In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983].) The state may draw distinctions between different groups but, at a minimum, the classifications created must bear a rational relationship to a legitimate public purpose. (*Ibid.*) Economic legislation is presumed to be constitutional and those challenging it must show the distinctions drawn by the statute do not bear some rational relationship to a conceivably legitimate state purpose. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 597 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *Lostritto* v. *Southern Pac. Transportation Co.* (1977) 73 Cal.App.3d 737, 749 [140 Cal.Rptr. 905].)

Section 7031 provides: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract, except that such prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029." Section 7029 requires a separate license for a joint venture entered into by already licensed individuals, corporations, partnerships or joint ventures.

---

[2]Although plaintiff failed to challenge the constitutionality of section 7031 in the trial court, this contention may be raised on appeal, inasmuch as it involves a matter of public policy and questions of law only. (See *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 4-5 [97 Cal.Rptr. 431].)

Plaintiff's mere assertion "[t]here is no rational basis for requiring corporations to obtain licenses and excusing joint venturers from obtaining a separate license" is not a sufficient showing to overcome section 7031's presumption of constitutionality. Moreover, we perceive a rational relationship between the classifications drawn and a legitimate state purpose.

■ The purpose of the Contractors License Law (§ 7000 et seq.) is to protect the public from incompetent or dishonest contractors by requiring that contractors be licensed by the state and that, to obtain the license, they show knowledge, experience and good character. (*Asdourian* v. *Araj* (1985) 38 Cal.3d 276, 282 [211 Cal.Rptr. 703, 696 P.2d 95].) Section 7031 is designed to enforce the licensing law by precluding an unlicensed contractor from using the courts to recover money owed for contracting work. (*Ibid.*)

■ The exception to the application of section 7031 covers joint venturers who are each individually licensed but who have not obtained an additional license for the joint venture as required by section 7029. Although such persons have not technically complied with the requirements of the licensing law, the public still receives the protection contemplated by the law inasmuch as each of the joint venturers is licensed and is legally responsible for the work performed.

By contrast, there is no guarantee that an unlicensed corporation is responsible and competent; it is not *necessarily* managed by licensed contractors. Even if an officer or employee of the corporation is a licensed contractor, that individual does not ordinarily bear responsibility for the corporation's obligations.

For the foregoing reasons, we conclude there is a rational relationship between the state's legitimate goal in enacting the Contractors License Law and the class singled out for special treatment under section 7031. Thus, there is no equal protection violation.

II

■ Plaintiff also contends the trial court erroneously barred this action under section 7031 in that: (A) the contract under which the action was brought was signed by Joan Knapp in her individual capacity, and she personally was a licensed contractor; and (B) plaintiff substantially complied with the provisions of section 7031. We agree with the latter part of this contention.

A\*

*Parties to the Contract*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

B

*Substantial Compliance*

The substantial compliance doctrine is explained in *Latipac, Inc.* v. *Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564]. In *Latipac,* the plaintiff contracted with defendant Latipac to grade and fill land owned by defendant. When defendant failed to pay for the work, plaintiff sued to recover the payment due; defendant then sought a writ of prohibition to restrain the superior court from proceeding in the case on the ground the plaintiff had not strictly complied with the provisions of section 7031. Although the plaintiff had possessed a valid contractor's license when the contract was executed, it had failed to submit a renewal application and fee, and its license had expired during the work. After the plaintiff completed performance, it renewed its license.

On appeal, the Supreme Court noted courts have not insisted upon strict observance of section 7031 but have allowed contractors to recover on obligations owed them if they have substantially complied with the statute and their substantial compliance has afforded the obligor the protection contemplated by the statute. (*Id.,* at p. 281; see, e.g., *Gatti* v. *Highland Park Builders, Inc.* (1946) 27 Cal.2d 687, 690 [166 P.2d 265].) ■ The test to determine whether a suit is barred by section 7031 is "whether the contractor's 'substantial compliance with the licensing requirements satisfies the policy of the statute.'" (*Latipac, supra,* 64 Cal.2d at p. 281, quoting from *Lewis & Queen* v. *N.M. Ball Sons* (1957) 48 Cal.2d 141, 149 [308 P.2d 713].)

The court found three elements upon which courts in the past have relied in applying the doctrine of substantial compliance:[3] "(1) the fact that plaintiff held a valid license at the time of contracting, (2) that plaintiff readily

---

\*Parts IIA and III of this opinion are not published, as they do not meet the standards for publication contained in rule 976(b) of the California Rules of Court.

[3]However, it declined to decide whether all three elements must be present before substantial compliance would be found.

secured a renewal of that license and (3) that the responsibility and competence of plaintiff's managing officer were officially confirmed throughout the period of performance of the contract." (*Latipac, supra,* 64 Cal.2d at pp. 281-282.)

The first of these, that plaintiff held a valid license at the time of contracting, is a crucial factor for two reasons: (1) this is the time when the other party to the contract decides whether the contractor possesses the requisite responsibility and competence to perform the job and whether it should enter into a relationship with the contractor; and (2) this makes the contract valid at its inception both as between the contracting parties and as to third parties who might rely on it. (*Id.,* at p. 282.) The absence of a license at the time of contracting has figured prominently in cases denying recovery due to lack of substantial compliance. (*Id.,* at p. 283.)[4]

In the instant case, plaintiff did not hold a contractor's license at the time of contracting or at any time during performance. Therefore, it has not met the first element of the test for substantial compliance. However, this element has far less importance here than in many instances. Inasmuch as Joan Knapp represented both parties to the contract and was the managing officer or partner of both entities, there was no problem of the other party to the contract being misled as to the responsibility or competence of the contractor due to unawareness of the contractor's unlicensed status.

While possession of a valid license at the time of contracting attests to the responsibility and competence of the contractor at the inception of the contract, the second element of the test, subsequent renewal of the license, attests to the contractor's continued responsibility and competence during performance. (*Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d at p. 283.) By this, the policy of the Contractors License Law is fulfilled—that contractors be fit to perform their jobs. (At p. 284.) However, "belated compliance with the statute does not in itself constitute substantial compliance if the *initial* acquisition of the required license postdates the *completion* of performance under the contract." (*Ibid.,* italics original, citation omitted.)

Here, the record indicates plaintiff did not apply for a license until performance had been completed and this action instituted. Hence, the second element of the *Latipac* test has not been fulfilled.

---

[4]However, recent cases have shown that a contractor who was unlicensed when executing the contract but licensed throughout the entire performance has complied with section 7031. (*Gaines* v. *Eastern Pacific* (1982) 136 Cal.App.3d 679 [186 Cal.Rptr. 421]; *Vitek, Inc.* v. *Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586, 590 [110 Cal.Rptr. 86].)

The third element of the test is met when the responsibility and competence of the contractor's managing officer are officially confirmed throughout performance. (*Id.*, at pp. 281-282.) Where the contractor is a corporation, it may receive a contractor's license if its "responsible managing officer" possesses the competence and experience necessary to enjoy a contractor's license. (*Id.*, at p. 285; § 7068, subd. (c).)

In *Latipac*, plaintiff's "responsible managing officer" was also the responsible managing officer of another corporation, one which possessed a valid contractor's license throughout the entire period plaintiff performed the contract. The licensing of the other corporation provided official confirmation of the managing officer's responsibility and competence. (*Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d at pp. 285-286.) Similarly, in *Citizens State Bank* v. *Gentry* (1937) 20 Cal.App.2d 415 [67 P.2d 364] (decided prior to the Supreme Court's formulation of the substantial compliance doctrine in *Gatti* v. *Highland Park Builders, Inc., supra,* 27 Cal.2d 687), the court sustained a recovery by an individual contractor whose license had expired during performance where a corporation controlled by him possessed a valid license throughout performance and the license presumably rested on his qualifications. Additionally, in cases examining this element of substantial compliance, no distinction is made on the question whether the entity holding the license was legally liable on the contract forming the basis of the action. (*Latipac, supra,* at p. 286, fn. 5.)

In the case at bar, it is uncontradicted that Joan Knapp possessed a valid contractor's license throughout plaintiff's performance. It may be presumed plaintiff's license would have rested on her credentials and qualifications. Therefore, the responsibility and competence of plaintiff's responsible managing officer were officially confirmed by Joan Knapp's continued licensing. Thus, the third element of the test for substantial compliance *has* been met.

In *Latipac*, all three elements of the test were met; accordingly, the court concluded the policy of the licensing statute had been effectively realized and the defendant had received the protection intended by the statute. (64 Cal.2d at p. 287.) In allowing plaintiff's suit, the court also noted that equity precludes the gratuitous enrichment of the defendant at the plaintiff's expense and there should be no forfeiture where not in aid of any ascertainable public policy. (*Ibid.*)

The question left unanswered in *Latipac*, "whether any of [the three elements], singly or in more limited combination, would constitute 'substantial compliance,'" (*id.*, at p. 281) recently was addressed in *Asdourian* v. *Araj, supra*, 38 Cal.3d 276, 284. There the Supreme Court indicated the failure

to establish all of the *Latipac* factors need not defeat a plaintiff's claim, inasmuch as the true test is " 'whether the contractor's "substantial compliance with the licensing requirements satisfies the policy of the statute." ' " (At p. 284, italics omitted, quoting from *Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d at p. 281.)

In *Asdourian,* plaintiff obtained a license for his sole proprietorship, "Artko Remodeling and Construction," but dealt with defendant under his own name. Defendant failed to pay all the money owed to plaintiff and sought to bar plaintiff's suit to recover the money owed under the provisions of section 7031. Plaintiff had intended to incorporate Artko, but failed to do so, and Artko remained a sole proprietorship; plaintiff remained personally liable for Artko's debts and responsibilities and he owned Artko's assets. (38 Cal.3d at pp. 284-285.)

Examining the *Latipac* elements, the court concluded: (1) even though plaintiff did not hold a valid license at the time the contract was executed, Artko did, so defendant received the assurance intended by the licensing statutes that he was dealing with a responsible and competent contractor; (2) there was no need for renewal of plaintiff's license, since Artko was licensed throughout the performance of the contract, confirming plaintiff's continued responsibility and competence; and (3) there was official confirmation of the responsibility and competence of plaintiff's managing officer since Artko's license was issued on the basis of plaintiff's competence and experience. (*Id.,* at p. 286.) Issuance of the license in plaintiff's name would not have provided defendant with any greater assurance he was dealing with an experienced, responsible and competent contractor. (*Ibid.*) Hence, although plaintiff violated the licensing laws by doing work as an individual, the policy of the Contractors License Law was satisfied and the defendant could not avoid his obligation to compensate plaintiff for work performed on the ground plaintiff did not literally comply with section 7031. (*Id.,* at p. 285.)

The instant case is similar to *Asdourian.* Although plaintiff violated the Contractors License Law, the policy of the law was satisfied in that the work was performed for the corporation by its responsible managing officer, Joan Knapp, who was licensed at all times, ensuring responsible and competent performance. Had RHC dealt with Joan Knapp individually, it would not have received any greater assurance of competency. Moreover, no ascertainable public policy would be served by allowing *interveners,* rather than the party with whom plaintiff contracted, to enforce the provisions of section 7031; certainly equity precludes interveners' gratuitous enrichment

at plaintiff's expense. (*Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d at p. 281.)

While *Asdourian* involved an individual and a sole proprietorship and the instant case involves an individual and a corporation, that distinction does not compel a different result here. As previously noted, when examining the third *Latipac* factor, where there has been official confirmation of the responsibility and competence of plaintiff's managing officer, no distinction is made on the question whether the entity holding the license is legally liable on the contract. (*Id.,* at p. 286, fn. 5.) Moreover, the party contracting with plaintiff, RHC, could not have been misled as to plaintiff's solvency or financial condition inasmuch as both parties were controlled by the same individual.

Interveners here, as did defendants in *Asdourian,* argue against substantial compliance, relying on *General Ins. Co.* v. *Superior Court* (1972) 26 Cal.App.3d 176 [102 Cal.Rptr. 541]. In *General Ins. Co.,* a licensed individual formed a corporation of which he was the sole owner, president, chairman of the board and responsible managing officer; he did not license the corporation because he erroneously believed it to be unnecessary. The corporation entered into a contract with defendant and performed its work, but defendant refused to pay. The corporation sued for payment; in response to defendant's petition, the Court of Appeal issued a writ of mandate compelling summary judgment for defendant in that the corporation had failed to comply with section 7031.

In concluding the corporation's failure to strictly comply with section 7031 barred its suit, the court noted that while the ultimate purpose of the Contractors License Law is the protection of the public from dishonest or incompetent contractors, the more immediate and specific purpose of section 7031 is to enforce the Contractors License Law by deterring contractors from contracting without a license. (*Id.,* at pp. 183-184.) It deemed this purpose to be controlling, relying on *Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d at page 151, and the dissenting opinion in *Latipac, Inc.* v. *Superior Court, supra,* 64 Cal.2d at p. 289. (26 Cal.App.3d at p. 184.) The court concluded the legislative policy of deterring unlicensed persons from contracting outweighed any harshness to the parties caused by enforcement of section 7031, and it could not weigh equitable considerations in a case involving compliance with section 7031. (*Id.,* at p. 184.) Both *Lewis & Queen* and the dissent in *Latipac* state that equitable considerations do not arise in an action barred by the express terms of section 7031. (*Lewis & Queen, supra,* 48 Cal.2d at p. 152; *Latipac, supra,* 64 Cal.2d at p. 288.) Thus, although the court found the ultimate statutory purpose of the Con-

tractors License Law was as well satisfied in *General Ins. Co.* as it had been in *Latipac* (26 Cal.App.3d at p. 183), the court refused to apply the substantial compliance doctrine and the corporation was denied recovery.

The Supreme Court in *Asdourian* rejected the above reasoning. Noting that the doctrine of substantial compliance has been well-established for five decades and courts are not free to disregard that doctrine, it held the court in *General Ins. Co.* erred when, relying on *Lewis & Queen* and the dissent in *Latipac,* it held it could not weigh equitable considerations when examining compliance with section 7031. (38 Cal.3d at p. 287.) *General Ins. Co.* was disapproved to the extent it rests on the logic of the *Latipac* dissent. (*Ibid.*)

Interveners here assert, relying on *General Ins. Co.,* that holding plaintiff substantially complied with section 7031 "would emasculate the statutory language requiring a separate license for a corporation, and would nullify the purpose of section 7031, and would be contrary to established legal precedent." However, this is the same argument made in the *Latipac* dissent and disapproved in *Asdourian.* Accordingly, the substantial compliance doctrine must be applied in the instant case, and equitable considerations compel the conclusion plaintiff substantially complied with the provisions of section 7031.[5]

III*

. . . . . . . . . . . . . . . . . . . .

The judgment is reversed.

Hanson (Thaxton), J., and Lucas, J., concurred.

A petition for a rehearing was denied November 13, 1985, and the petition of interveners and respondents for review by the Supreme Court was denied December 31, 1985. Mosk, J., was of the opinion that the petition should be granted.

---

[5]Inasmuch as we find substantial compliance and reverse the judgment, we need not address plaintiff's third and fourth contentions relating to the propriety of summary judgment.

*See footnote, *ante,* page 431.