[No. B065672. Second Dist., Div. Five. Nov. 30, 1992.]

G. E. HETRICK & ASSOCIATES, INC., Plaintiff and Appellant, v.
SUMMIT CONSTRUCTION & MAINTENANCE CO., INC., et al.,
Defendants and Respondents.

320

**COUNSEL**

Edwin D. Hausmann for Plaintiff and Appellant.

Pray, Price, Williams & Russell, Bruce Bothwell, Burke, Williams & Sorensen and Steven Karlton Kop for Defendants and Respondents.

**OPINION**

**GRIGNON, J.**—Plaintiff and appellant G. E. Hetrick & Associates, Inc. (Hetrick, Inc.) appeals from a summary judgment entered against it and in favor of defendant and respondent Summit Construction & Maintenance Co., Inc. (Summit), defendant and respondent Ohio Casualty Insurance Company (Insurer), and defendants and respondents American Private Power, Inc. (APPI), American Private Power Ventures (APPV), and WCO Port Properties, Ltd. (WCO) (collectively, the APP defendants). Hetrick, Inc. brought this action for nonpayment for its work as a subcontractor on a power plant project for the Queen Mary and Spruce Goose tourist attractions in Long Beach. The action was brought against the owner, general contractor, and surety bond company. Defendants obtained summary judgment on the ground that Hetrick, Inc. was an unlicensed contractor at all times material to the action and is barred from litigating under Business and Professions Code section 7031.[1] As to Hetrick, Inc.'s appeal from the judgment in favor of Insurer, we reverse. As to Hetrick, Inc.'s appeal from the judgment in favor

---

[1]All future references are to the Business and Professions Code unless otherwise noted.

of Summit and the APP defendants, we treat the appeal as a petition for writ of mandate and grant the petition.

## FACTS AND PROCEDURAL BACKGROUND

### The Allegations of the Complaint

The instant action was filed on March 16, 1990. The complaint alleges as follows. Hetrick, Inc. is a California corporation "duly licensed by the State of California" to perform the acts described in the complaint. On or about November 21, 1988, Summit and APPV entered into a contract by which Summit agreed to construct a cogeneration unit for the Queen Mary energy plant. APPV is a California limited partnership whose general partner is APPI. WCO is the lessee of the real property known as 1126 Queen's Highway in Long Beach. WCO also owns the Queen Mary/Spruce Goose energy plant located near there.

On November 21, 1988, Summit and Hetrick, Inc. entered into a written subcontract whereby Hetrick, Inc. agreed to provide certain labor, materials, and equipment to complete the work which Summit agreed to perform for APPV. Defective plans caused Hetrick, Inc. to engage in extra work which resulted in additional costs to Hetrick, Inc. and delay of the project.

The complaint alleged Summit had breached the written contract, which provided that Hetrick, Inc. be paid all costs, plus a fee of $47,521, plus profit. Hetrick, Inc. sought damages of $304,559.77 with interest. Hetrick, Inc. also alleged causes of action against Summit for quantum meruit and for an account stated. Hetrick, Inc. also sought to recover against all defendants, including Insurer, on Insurer's labor and materials bond issued in connection with the project. Finally, Hetrick, Inc. sought to foreclose its mechanic's lien against APP and Summit.

Summit answered, interposing 19 affirmative defenses, including that Hetrick, Inc. was barred from relief by section 7031 on account of its failure to comply with the Contractors License Law. All other defendants also answered to the same effect on this issue.

Summit also filed a cross-complaint against Hetrick, Inc., APP, and WCO. That cross-complaint alleged that Hetrick, Inc. breached its written contract by failure to perform the work in a workmanlike manner and was negligent. The cross-complaint also sought a judicial declaration that any amounts due to Hetrick, Inc. should be paid by APP and WCO. Hetrick, Inc. answered the cross-complaint.

*The Motions for Summary Judgment*

On October 22, 1991, the APP defendants moved for summary judgment on the ground that no triable issue existed with respect to Hetrick, Inc.'s failure to satisfy state licensing requirements, and the bar embodied in section 7031. On October 24, 1991, Summit and Insurer moved for summary judgment on the same ground. Both matters were set for hearing on December 24, 1991.

*Summit/Insurer's Separate Statement of Undisputed Material Facts and Supporting Evidence*

Summit/Insurer's separate statement set forth the following undisputed material facts: Hetrick, Inc. did not have a contractor's license in its name at the time of contracting or performance of the work. Hetrick, Inc. also did not have the required class A general building engineering contractor's license at the time of contracting or performance of the work.[2] The separate statement was supported by a declaration of Joseph Buley, vice-president and managing officer of Summit until August 1990. According to Buley, Hetrick, Inc. agreed to serve as construction manager for the project and was responsible for providing engineering for the construction of the power plant, according to the provisions of the construction management services agreement entered into between APPV and Hetrick, Inc.[3] This contract was in addition to the November 21, 1988, agreement sued upon. Both contracts were attached to the declaration. The November 21, 1988, contract was executed by Victor Grotilsch on behalf of Hetrick, Inc. and by Buley on behalf of Summit. Buley assumed that Hetrick, Inc. was a corporation and that the license number (No. 520699 CA) referenced on the contracts was for the corporation. He was never advised that the license was not the corporation's license.

Summit/Insurer also submitted a declaration of counsel, attaching certain certified documents. A certificate from the Secretary of State was attached showing that Hetrick, Inc. was incorporated on October 30, 1987. A certified license history from the Contractors License Board was attached showing that Hetrick, Inc. had obtained a class B general building contractor's license (No. 594508 CA) on May 22, 1990. The license history identifies Gary Edwin Hetrick as president, treasurer, and responsible managing officer for Hetrick, Inc., and Victor Grotilsch as vice-president and secretary. An additional certified license history was provided for G. E. Hetrick & Associates, a sole proprietorship, showing that G. E. Hetrick & Associates had obtained

---

[2]Apparently, this argument has been abandoned on appeal. In any event, clearly triable issues of fact exist as to this issue.

[3]The construction management services agreement is dated December 19, 1988, but is not executed. It refers generically to the "Construction Management Company" or "C.M.C."

a class B general building contractor's license on November 13, 1987. Gary Edwin Hetrick was identified as the sole owner. Both licenses had been continuously in effect from their issuance to December 1990.

*The APP Defendants' Separate Statement of Undisputed Material Facts and Supporting Evidence*

The separate statement of the APP defendants provided simply that Hetrick, Inc. did not have a contractor's license in its name at the time of the execution of the alleged written contracts, at the time of the performance of the work or during any relevant time alleged in the complaint. The statement was supported by the declaration of counsel, attaching and authenticating the same license histories provided by Summit and Insurer in support of their motion. The APP defendants also provided a declaration of Yoram Katz, an officer of APPI and general partner of APPV. Katz described the work encompassed in the November 21, 1988, subcontract between Summit and Hetrick, Inc. as "highly technical consisting of mechanical, electrical, civil and structural engineering requirements." Katz declared that the work required a class A general building engineering contractor's license under section 7056. Katz also represented that the work performed by Hetrick, Inc. had not only been untimely but also substandard, and another company had been hired to finish the project.

In an additional declaration of Katz filed by the APP defendants, Katz declared that, "[d]uring the construction of this project, I was at the job site every day. I never saw Gary Hetrick at the job site even once during this time. In fact, I had never met nor had even heard of Mr. Hetrick until late 1990, well after [Hetrick, Inc.] left the uncompleted job site in 1989. Mr. Hetrick had no involvement in the construction of this project as I was present at the site every day during construction. In fact, Mr. Hetrick was not even involved in the signing of the subject agreements. . . . [¶] In fact, Mr. Grotilsch was the on-site manager for [Hetrick, Inc.] He was the sole supervisor of a staff of three to four people . . . Mr. Grotilsch was present at the site almost every day during construction. It was Mr. Grotilsch who signed the purchase orders, progress reports, correspondence, and the subcontract. Mr. Hetrick had no such involvement at the job site."

*Hetrick, Inc.'s Separate Statement of Disputed Material Facts and Supporting Evidence*

Hetrick, Inc. filed written opposition to the motion, contending that Hetrick, Inc. had substantially complied with the Contractors License Law inasmuch as G. E. Hetrick & Associates held a valid contractor's license as

of the time of the subcontract and its performance. Hetrick, Inc.'s separate statement alleged that whether Hetrick, Inc. possessed a valid license in its name at the time of execution, time of performance, or any relevant time was disputed. Hetrick, Inc. also disputed that the work performed by Hetrick, Inc. required a class A general building engineering contractor's license.

*The Order Granting Summary Judgment*

 ██ ██ A hearing was held on the motions on December 24, 1991. On the day of the hearing, Hetrick, Inc. attempted to file a supplemental declaration by Gary Hetrick, but the trial court ruled that the declaration was untimely filed under section 437c of the Code of Civil Procedure.[4] The motions were granted, and judgment was entered against Hetrick, Inc. on its complaint on January 24, and February 7, 1992. This appeal was timely filed.

DISCUSSION

*Appellate Jurisdiction*

 A threshold issue is whether the summary judgment on the complaint is appealable, in that it appears from the record that a cross-complaint is still pending between the same parties except Insurer. This court raised the issue, sua sponte, whether it has jurisdiction to hear this appeal. The parties responded in letter briefs. We have concluded that except as to Insurer, the summary judgment in favor of the other defendants is not a final appealable judgment. (*California Dental Assn.* v. *California Hygienists' Assn.* (1990) 222 Cal.App.3d 49 [271 Cal.Rptr. 410].) The summary judgment in favor of Insurer is, however, a final appealable judgment. (*Justus* v. *Atchison* (1977) 19 Cal.3d 564, 567-568 [139 Cal.Rptr. 97, 565 P.2d 122].) Since we must resolve this single-issue appeal as to Insurer, the interests of judicial economy will be better served by resolving the issues as to all parties at this time, and defendants did not originally contest our jurisdiction, we will treat this appeal as a petition for writ of mandate as to all defendants except Insurer,

---

[4]We do not consider Gary Hetrick's supplemental declaration as it was properly excluded by the trial court on the motion for summary judgment. All opposition papers, including declarations, must be filed at least 14 days prior to the hearing under section 437c of the Code of Civil Procedure. To the extent that Hetrick, Inc. needed additional time to marshal evidence to refute the reply papers filed by defendants, it should have requested a continuance to present further evidence, as is expressly provided by Code of Civil Procedure section 437c. It did not.

rather than dismissing the appeal as to all but Insurer.[5] (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 400-401; *California Dental Assn., supra.*)

*Standard of Review*

In reviewing a summary judgment, we must determine if "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) ▮ We conduct an independent review of the trial court's disposition. (*Olson* v. *Federal Ins. Co.* (1990) 219 Cal.App.3d 252, 260 [268 Cal.Rptr. 90].) In reviewing a grant of summary judgment, our analysis is guided by the following rules:

"The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact. [Citation.] Accordingly, the function of the trial court in ruling on a motion for summary judgment is merely to determine whether such issues of fact exist, and not to decide the merits of the issues themselves. [Citation.] [¶] Summary judgment is a drastic measure that deprives the losing party of a trial on the merits. [Citation.] It should therefore be used with caution, so that it does not become a substitute for trial. [Citation.] The affidavits of the moving party should be strictly construed, and those of the opponent liberally construed. [Citation.] [¶] Any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. [Citation.] [¶] A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail. [Citation.] To succeed, the defendant must conclusively negate a necessary element of the plaintiff's case, and demonstrate that under no hypothesis is there a material issue of fact that requires the process of a trial." (*Molko* v. *Holy Spirit Association* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].)

---

[5]No cross-complaint is pending as to Insurer. Therefore, the order granting summary judgment is final as to Insurer and, thus, immediately appealable. (*Justus, supra,* at pp. 567-568.) Considering the merits as to Hetrick, Inc.'s appeal only with respect to Insurer, while dismissing the appeal as to the remaining respondents, would result in the fragmentation and multiplicity of appeals which the one final judgment rule seeks to avoid. Therefore, we conclude that this is an appropriate case in which to exercise our discretion to treat the appeal as to the defendants, other than Insurer, as a petition for writ of mandate. (*California Dental Assn., supra,* at p. 60.) This case is distinguishable from *Sturm, Ruger & Co.* v. *Superior Court* (1985) 164 Cal.App.3d 579 [210 Cal.Rptr. 573], where the parties sought review of the *denial* of a motion for summary judgment by a writ petition which was held untimely under subdivision (*l*) of Code of Civil Procedure section 437c. In the case at bar, the order appealed from as to all parties is a purported final judgment on the complaint following an order granting summary judgment and is, therefore, not an "order pursuant to [Code of Civil Procedure section 437c] except the entry of summary judgment. . . ." (Code Civ. Proc., § 437c, subd. (*l*).)

*Section 7031*

The Contractors License Law, section 7000 et seq., establishes a comprehensive scheme to ensure the licensing of all California contractors and the enforcement of complaints against unlicensed contractors. The term "contractor" is broadly defined as "any person, who undertakes to or offers to undertake to or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof. . . . The term contractor includes subcontractor and specialty contractor." (§ 7026.) It is a misdemeanor to operate within the state as a contractor without a license, unless a statutory exemption applies. (§ 7028.)

An additional deterrent to unlicensed contracting is found at section 7031. Section 7031 provides, in relevant part, that "[n]o person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, *or recover in law or equity in any action*, in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he *or she* was a duly licensed contractor at all times during the performance of that act or contract, *regardless of the merits of the cause of action brought by the person*, except that *this* prohibition shall not apply to contractors who are each individually licensed under this chapter but who fail to comply with Section 7029. . . ."[6] [¶] *The judicial doctrine of substantial compliance shall not apply to this section*." (Italics added to indicate amendments by Stats. 1989, ch. 368, § 1.)[7] ▮ The purpose of section 7031 is to further protect the public from incompetent or unscrupulous contractors, which policy outweighs the harshness which may sometimes result from application of the section. (*Scientific Cages, Inc.* v. *Banks* (1978) 81 Cal.App.3d 885 [146 Cal.Rptr. 780].)

Most recently, in *Hydrotech Systems, Ltd.* v. *Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370], our Supreme Court observed that "[t]he licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business." Section 7031 advances this

---

[6]Section 7029 provides for the joint licensing of individually licensed contractors operating in combination or in a joint venture in California.

[7] Section 7031 was further amended in 1991. (Stats. 1991, ch. 632 (Assem. Bill No. 1382), § 1.)

purpose by "withholding judicial aid" from persons who have failed to comply with statutory licensing requirements. (52 Cal.3d at p. 995].)

The plaintiff in *Hydrotech* argued that it had "substantially complied" with the Contractors License Law. (See, e.g., *Asdourian* v. *Araj* (1985) 38 Cal.3d 276, 282-289 [211 Cal.Rptr. 703, 696 P.2d 95]; *Latipac Inc.* v. *Superior Court* (1966) 64 Cal.2d 278 [49 Cal.Rptr. 676, 411 P.2d 564]; *Gatti* v. *Highland Park Builders, Inc.* (1946) 27 Cal.2d 687 [166 P.2d 265].) *Hydrotech* determined that the doctrine of substantial compliance reflected in earlier decisions continued to apply to contracts made and performed prior to the 1989 amendments which rendered the doctrine of substantial compliance inapplicable to section 7031. (*Hydrotech, supra*, 52 Cal.3d at p. 996, fn. 5.) Reviewing applicable authority, the Supreme Court concluded that the doctrine of substantial compliance applied in the licensing context solely if the license was defective "*only in form* and the defendant had received the 'full measure' of protection intended by the Legislature." (*Id.* at p. 996, italics in original.)

Hetrick, Inc. relies on the earlier decisions of *Asdourian, supra*, 38 Cal.3d 276 and *Latipac, supra*, 64 Cal.2d 278, as well as *Knapp Development & Design* v. *Pal-Mal Properties, Ltd.* (1985) 173 Cal.App.3d 423 [219 Cal.Rptr. 44]. In *Asdourian*, an individual obtained a valid license, but requested that it be issued in the name of the corporation which he intended to form, but did not. Asdourian was allowed to proceed with his action for nonpayment because "the competence and experience of plaintiff Asdourian formed the basis of the license issued to [his business] . . . . [¶] Issuance of a license to Asdourian in his own name would not have provided defendant with any greater assurances that he was dealing with an experienced and competent contractor. . . . The work would have been performed by the same employees, and supervised by the same person. Defendant would have obtained no better protection, and no different performance, had he contracted with [the licensed business]." (*Asdourian, supra*, at p. 286.)

In *Knapp*, substantial compliance was also found, where Joan Knapp, who had held a valid contractor's license for 17 years, was the responsible managing officer of the unlicensed corporation. Joan Knapp also represented the other party to the contract, and thus, there could be no claim of misrepresentation as to the competence of the entity to serve as contractor on that project. (*Knapp Development & Design, supra*, 173 Cal.App.3d at pp. 431-434.)

*Asdourian* and *Knapp* rely upon the holding in *Latipac, supra*, 64 Cal.2d at pages 285-287, to the effect that where the responsibility and competence of

plaintiff's managing officer were officially confirmed throughout the period of performance of the contract, the doctrine of substantial compliance applies. In *Latipac*, the responsible managing officer of the unlicensed plaintiff corporation held a valid contractor's license throughout the period in question. "The existence of this license necessarily evidences an official determination of the experience and competence of [plaintiff's responsible managing officer], the same experience and competence which would have been in issue in a consideration of plaintiff's application for renewal of its license. This official confirmation of [plaintiff's responsible managing officer's] qualifications *throughout the period of performance* should exorcise any remaining doubt that the policy of the statute has been satisfied in this case." (*Latipac, Inc., supra*, 64 Cal.2d at pp. 285-286, italics in original; *Hydrotech, supra*, 52 Cal.3d at p. 996, where Hydrotech failed to allege that its " 'continuing competence and responsibility,' " and that of its agents, had been officially examined and officially resolved.)

In the case at bar, Hetrick, Inc. is entitled to rely on the statutorily disapproved doctrine of substantial compliance with the Contractors License Law, under the authority of *Hydrotech*. The contract and performance at issue in this suit precede the 1989 amendments to section 7031, which are not to be applied retroactively. Thus, whether Gary Hetrick's individual license,[8] issued in the name of his sole proprietorship, G. E. Hetrick & Associates, constitutes substantial compliance, turns upon whether Gary Hetrick is the "responsible managing officer" of Hetrick, Inc.

*"Responsible Managing Officer"*

The evidence establishes that a triable issue of fact exists as to whether Gary Hetrick was the responsible managing officer of Hetrick, Inc. to a degree sufficient to establish substantial compliance with the Contractors License Law and to avoid the bar of section 7031. Defendants attempt to negate this possibility through the declaration of Katz, who averred that he never saw Gary Hetrick on the jobsite, and that Grotilsch appeared to Katz to be supervising the job and to have executed the contract in question. This evidence does not establish as a matter of law that Gary Hetrick did not, in fact, supervise the job. Presence at the jobsite may or may not be necessary, as a matter of law, to establish supervision sufficient to avoid section 7031. It may even be possible that Gary Hetrick visited the site to supervise at times when Katz was not present. This analysis is borne out by statutes and applicable regulations which define "responsible managing officer" for purposes of the licensing law.

---

[8]The record establishes that this individual license was in effect continuously throughout the period of contracting and performance.

A "responsible managing employee" is defined by statute as "an individual who is a bona fide employee of the applicant and is actively engaged in the classification of work for which that responsible managing employee is the qualifying person in behalf of the applicant." (§ 7068.) Title 16, section 823, subdivision (a) of the California Code of Regulations defines a bona fide employee within the meaning of section 7068 as "an employee who is permanently employed by the employer and is actively engaged in the operation of the applicant's contracting business for at least 32 hours or 80% of the total hours per week such business is in operation, whichever is less." Moreover, the person who qualifies for the license "on behalf of an individual or firm" is responsible for exercising that "direct supervision and control of [the] employer's or principal's construction operations as is necessary to secure full compliance with the provisions of this chapter and the rules and regulations of the board relating to the construction operations. . . ." (§ 7068.1.)

For purposes of section 7068.1, " 'direct supervision and control' includes anyone or any combination of the following activities: supervising construction, managing construction activities by making technical and administrative decisions, checking jobs for proper workmanship, or direct supervision on construction job sites." (Cal. Code Regs., tit. 16, § 823, subd. (b).) Thus, presence at the job site is only one of the applicable measures of "direct supervision and control."

Gary Hetrick's initial declaration was sufficient to raise a triable issue as to his degree of "direct supervision and control" when he described himself as the "responsible managing officer" of Hetrick, Inc. That contention was not conclusively negated by defendants as is required in order to merit summary judgment. We note also that Gary Hetrick is described as the responsible managing officer on the contractor's license subsequently issued to Hetrick, Inc. Thus, under the appropriate guidelines for construction of the moving and opposing party's affidavits, we conclude that a triable issue of fact exists as to this issue, and consequently, as to whether Hetrick, Inc. substantially complied with the applicable licensing statutes. As such, it was error for the trial court to grant the motions for summary judgment.

## DISPOSITION

The petition for writ of mandate is granted. The judgment is reversed. The trial court is ordered to vacate its order granting defendants' motions for summary judgment and enter a new and different order denying such mo-

tions. Hetrick, Inc. shall recover its costs on appeal jointly and severally from defendants.

Turner, P. J., and Jackson, J.,* concurred.

A petition for a rehearing was denied December 10, 1992, and respondents' petition for review by the Supreme Court was denied March 11, 1993. Mosk, J., was of the opinion that the petition should be granted.

*Judge of the Municipal Court for the Antelope Judicial District sitting under assignment by the Chairperson of the Judicial Council.